**NO EAST-WEST HIGHWAY COMMITTEE, INC.,**
Plaintiff, Appellant,

v.

**John P. CHANDLER, as New Hampshire Highway Commissioner,**
Defendant, Appellee.

No. 85-1360.

United States Court of Appeals,
First Circuit.

July 12, 1985.

Haynes N. Johnson, Danbury, Conn., with whom Johnson, Chambliss and Wardenburg, Danbury, Conn., David F. Cavers, Jr. and Powers & Hall, Boston, Mass., were on brief, for plaintiff, appellant.

Peter C. Scott, Asst. Atty. Gen., Concord, N.H., with whom Stephen E. Merrill, Atty. Gen., Steven M. Houran, Asst. Atty. Gen., and Michael J. Walls, Concord, N.H., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, RUBIN [*] and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal by the No East-West Highway Committee, Inc. ("NEWHC") from a decision by the United States District Court for the District of New Hampshire denying NEWHC's motion for a preliminary injunction to restrain the appellee, John P. Chandler, the New Hampshire Highway Commissioner, from proceeding with the Marlborough Route 101/Main Street Highway Project ("the Project") on the grounds that it is a "major Federal action" that cannot be undertaken without the prior preparation of an Environmental Impact Statement ("EIS"). Finding that the district court did not abuse its discretion in denying NEWHC preliminary relief, we affirm.

### I.

The roots of the present controversy go back to 1960, when the New Hampshire Department of Public Works and Highways ("NHDPW & H") commissioned the firm of Fay, Spofford, and Thorndike ("FST") to prepare an engineering study and design report for the relocation and upgrading of an existing road, Route 101, as a limited-access highway running east-west across southern New Hampshire. In the 1970's, two supplementary studies for east-west highways were prepared at NHDPW & H's behest. NHDPW & H also adopted a plan to construct a bypass of the town of Milford, and conducted studies for a bypass of Dublin, both of which correspond to parts of the overall FST study.

Fearing that the two studies, among others, and improvements being made to segments of Route 101, were the outward signs of a concealed intention to construct a four-lane limited-access east-west highway across New Hampshire, NEWHC sued in the United States District Court for the District of New Hampshire to obtain a declaratory judgment and to enjoin NHDPW & H from planning or constructing such a highway without filing an EIS. In a com-

prehensive opinion, then District Judge Hugh Bownes found evidence of a drift towards building an east-west highway on a segmented basis, but concluded there was as yet no overall federal or state plan to do so and that study of the proposed highway was still too vague and preliminary to require an EIS. *No East-West Highway Committee, Inc. v. Whitaker*, 403 F.Supp. 260 (D.N.H.1975). The court said it would view any future construction comporting with any part of the FST study other than "betterments" of existing roads as a "major Federal action" requiring the preparation of an EIS under the National Environmental Protection Act, 42 U.S.C. § 4332 *et seq.* ("NEPA"). Judge Bownes used the term "betterments" in his opinion mainly in connection with improvements in existing roads, including flattening curves, widening of the pavement, or improvement of the shoulder, that did not involve acquisition of rights-of-way or the use of federal funds. *See* 403 F.Supp. at 269. The court denied NEWHC's request for an injunction but retained jurisdiction.

In August 1978, F.T. Comstock, Jr., a Federal Highway Division Administrator, sent Judge Bownes a letter detailing, *inter alia*, a proposed improvement of the portion of Route 101 that coincides with Main Street in Marlborough. The letter describes the improvement as follows:

> The proposed typical section consists of two 12' lanes and two 10' shoulders. It will involve several large trees, and possibly several buildings (residences and gas stations) within 60-foot right-of-way width. The estimated cost is $1.2 million for 0.9 mile of reconstruction.

After a hearing that all parties attended, Judge Bownes concluded that the use of federal funds for the Main Street improvement did "not violate either the terms or the spirit of [his] original order." *No East-West Highway Committee, Inc. v. Whitaker*, No. 73–199 slip op. (D.N.H. Sept. 19, 1978).

[*] Of the Fifth Circuit, sitting by designation.

That same day, Judge Bownes requested the parties to submit briefs on the development of the facts and the law since 1975. After reviewing the post-1975 case law, Judge Bownes concluded that the Supreme Court had subsequently made clear that under the language of NEPA no agency could be required to prepare an EIS before it had made a "proposal" for a "major Federal action." He thought that it was premature for him to exercise continuing jurisdiction over the alleged plan until NHDPW & H made a proposal. He therefore terminated his order of continuing jurisdiction and rescinded all subsequent orders made pursuant thereto. *No East-West Highway Committee, Inc. v. Whitaker,* No. 73–199 slip op. (D.N.H. Dec. 26, 1978).

In 1977, NHDPW & H commenced the preliminary design phases of the present Project, which it represented would correct the poor condition of Main Street in Marlborough and reconstruct its surface following the completion of the town's proposed sewer project. The plan it eventually adopted closely follows that set out in the Comstock letter. It involves the modernization of Route 101/Main Street on its existing location by widening the present 45-foot right-of-way to one for the most part 60 feet wide to accommodate two twelve-foot lanes, two ten-foot shoulders, curbs, and sidewalks; at the Project's western end, the shoulders narrow to six feet. The total length of Route 101/Main Street affected by the Project is 9/10 mile. The widening of the right-of-way necessitates the taking of a number of strips of land along the sides of Main Street, as well as the acquisition of three parcels in their entirety. Also involved are the straightening of one substandard curve to improve safety, the installation of a new roadway drainage system, and the relocation of utility poles onto the State's right-of-way. Under the terms of the plan, the speed limit on Route 101/Main Street would remain 30 miles-per-hour. A construction contract for the Project was awarded on February 22, 1985, and construction commenced on March 13, 1985.

On March 22, 1985, NEWHC filed the present action. A hearing was held on NEWHC's motion for preliminary injunction on March 29, 1985. By then, the state had completed the 73 necessary right-of-way takings, including the three complete parcels, whose former owners had been relocated; moved utility poles and portions of the town's new sewer system to the right-of-way; completed tree clearing; widened the north side of Main Street; and completed one thousand feet of excavation and preparation of subbase for the new roadway.

At the hearing, defendant presented testimony by Highway Design Engineer Duncan S. Pearson that Route 101/Main Street was in very poor shape, had little foundation material, was severely susceptible to frost, and had a highly fractured surface. Pierson also testified that the installation of the town's new sewer system required so many lateral excavations of the existing surface that repaving was a practical necessity. An Environmental Assessment submitted as plaintiff's exhibit indicates that Route 101/Main Street may have represented a danger to travellers. Pierson pointed out that the Project deviated substantially from what the earlier FST study for an east-west highway had recommended for Marlborough (the study had called for a by-pass of the town).

The parties presented experts whose testimony conflicted sharply as to whether the new Route 101/Main Street could be converted to a four-lane road after completion of the Project simply by restriping. No evidence was presented that the Project would itself increase traffic on Route 101/Main Street, although some increase in volume with or without the Project was expected. On the issue of the relative harm that would result to the parties from granting or denying the motion for preliminary injunction, Pearson testified that the State of New Hampshire would suffer damages of between $250,000 and $500,000 if construction were interrupted, while witnesses for NEWHC warned that the new

Route 101/Main Street would effectively split the town in two.

The District Court denied the plaintiff's motion for a preliminary injunction. Citing, *inter alia, Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981), it pointed out that a plaintiff seeking a preliminary injunction had to demonstrate (1) that it would suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that it is likely to succeed on the merits; and (4) that the public interest would not be adversely affected by the granting of the injunction. After reviewing the evidence, the court found that it "establishes that the Marlborough Project is simply a modernization of the existing Route 101 (Main Street)," and that "the plaintiff has not satisfied the four criteria enumerated [above], especially criteria (1) and (3)."

## II.

■ NEWHC brings two grounds for appeal. First, NEWHC argues, Judge Bownes' *No East-West Highway* decision rendered in 1975, 403 F.Supp. 260, is res judicata insofar as it held that any future construction, other than a "betterment," would be a major federal action and thus would require an EIS. No EIS for the Project having been prepared, the district court allegedly erred in denying an injunction. NEWHC contends that Judge Bownes' 1975 decision survived his 1978 order, because the latter said only that he was "terminating [his] order of continuing jurisdiction and rescinding all *subsequent* orders made pursuant thereto" (emphasis added). Although NEWHC does not specify whether it seeks to have us find the district court bound by direct or collateral estoppel or the doctrine of the law of the case, we find none of these applicable.

■ The upshot of Judge Bownes' 1978 analysis of Supreme Court decisions was that it was premature for him to exercise jurisdiction until a proposal for federal action had been made. *See No East-West*

*Highway Committee*, No. 73–199, slip op. at 4 (D.N.H. Dec. 26, 1978) ("When and if a proposal for federal action has been made relative to a bypass in the Dublin area, the plaintiff may, if it wishes, bring an action in the federal court challenging the adequacy and extent of the EIS prepared by defendants.") We read Judge Bownes' statement in 1978 that he was "terminating [his] order of continuing jurisdiction and rescinding all subsequent orders made pursuant thereto" as terminating the instructions which his retained jurisdiction was supposed to enforce. Both the court's rationale for relinquishing jurisdiction, as well as the fact that its 1975 disposition took no action *other* than to retain jurisdiction, suggest that these directions ceased to have any binding effect. A vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case. *See, e.g., De Nafo v. Finch*, 436 F.2d 737, 740 (3d Cir. 1971); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4432 at 302 (1981).

Even if Judge Bownes' 1978 order had left his 1975 directions in force, the district court was not required to find that the present Project was a major federal action and not a "betterment." 403 F.Supp. at 283. The plans for Route 101 that were then feared to foreshadow the building of an east-west highway involved bypasses of Milford and Dublin. A plan virtually identical to the present Project was found in 1978 by Judge Bownes *not* to require an EIS, although he was aware when he so ruled that the proposal required federal funds and involved right-of-way takings, and thus arguably fell outside the exception for betterments made in his 1975 opinion. It would be peculiar to hold that Judge Bownes' 1975 opinion bound the district court to enjoin a project that Judge Bownes later approved.

■ Second, NEWHC argues that the district court abused its discretion by deciding on the merits that NEWHC was not entitled to a preliminary injunction. The court below ruled that NEWHC had failed

to persuade it as to any of the four required criteria, i.e. irreparable injury, injury relatively greater than defendant's, likelihood of prevailing on the merits, and the public interest. To reverse, we must find that the court abused its discretion or committed clear error of law as to each of these criteria. *See, e.g., Planned Parenthood League*, 641 F.2d at 1009. As the court did not, in our view, abuse its discretion in ruling that NEWHC was unlikely to prevail on the merits, we affirm without considering the other criteria.

Under NEPA, 42 U.S.C. § 4332(2)(c), federal agencies must prepare an EIS with any proposal "for legislation and other major Federal actions significantly affecting the quality of the human environment." There is no dispute that the Federal Highway Administration (FHWA) is the agency that would be responsible for filing an EIS in this case. Under Council of Environmental Quality (CEQ) regulations adopted by the FHWA, which the Supreme Court has held entitled to substantial deference, *see Andrus v. Sierra Club*, 442 U.S. 347, 358, 99 S.Ct. 2335, 2341, 60 L.Ed.2d 943 (1979), "major" has no meaning independent of "significantly." 40 C.F.R. § 1508.-18, *incorporated by* 23 C.F.R. 771.107. "Significantly," in turn,

> requires considerations of both context and intensity:
>
> (a) *Context.* This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Significance varies with the setting of the proposed action. For instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole. Both short- and long-term effects are relevant.
>
> (b) *Intensity.* This refers to the severity of impact.

40 C.F.R. § 1508.27, *incorporated by* 23 C.F.R. § 771.107. NEWHC cites to the following issues set out under the heading of intensity that it feels militate in its favor:

> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
>
> (2) The degree to which the proposed action affects public health or safety.
>
> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.
>
> (7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.
>
> *Id.*

The district could reasonably have found that, on balance, the effect of the project on public health and safety, the degree of controversy surrounding it, and the likelihood of future impacts did not add up to an action "significantly" affecting the environment. First, plaintiff presented no clear evidence tending to establish that a substantial increase in traffic volume or speed would result from the Project. Nor was there evidence that air or noise pollution along the route would materially worsen, or that crossing or traffic accidents might substantially increase; indeed, since the project calls for the correction of a substandard curve and the repair of broken road surfaces, it could be thought that the project would improve public safety. The town, albeit with some dissent, endorsed the Project at a meeting in March, 1979, held after a public hearing, and continued to support the Project as of the date of the hearing before the district court. The court was presented with little evidence other than the present suit that the Project is "highly" controversial.

Furthermore, under FHWA regulations, the following improvements are classified as not requiring an EIS:

Modernization of an existing highway by resurfacing, restoration, rehabilitation, widening less than a single lane width, adding shoulders, adding auxiliary lanes for localized purposes (e.g., weaving, turning, climbing), and correcting substandard curves and intersections. This classification is not applicable when the proposed project requires acquisition of more than minor amounts of right-of-way or substantial changes in access control.

23 C.F.R. § 771.115(b)(13). While the Project called for multiple land-takings, these involved only those very small strips necessary for the 15-foot added width and straightening of the curve. This is not to make light of appellants' fears that even this relatively slight widening of an existing road may, besides esthetic loss, invite more traffic, higher speeds and other adverse effects that may, over time, add up to more than appellees will concede. But at least on this record, we cannot say that the Project, by itself, necessitated a finding that it would "significantly" affect the environment.

The plaintiff's case boils down to whether the Project is really but a step in a larger plan to build a four-lane highway through the center of Marlborough. Although NEWHC presented evidence tending to show that NHDPW & H had in the 1970's studied the feasibility of converting Route 101 into a four-lane limited-access highway across the state, and that the Project might be readily converted into a four-lane highway simply by restripping, plaintiff presented no evidence that NHDPW & H had any present proposal to construct such a highway and defendant's evidence indicated that the Project could not be directly converted to a four-lane highway. The district court did not abuse its discretion in determining that the Project was no more than what it seemed to be: the repaving and modernization of a $^9/_{10}$ mile stretch of worn and dangerous road.

*Affirmed.*