55 F.3d 592
 1995-1 Trade Cases P 70,984, 34 U.S.P.Q.2d 1699
 U.S. PHILIPS CORPORATION, Plaintiff/Counterdefendant-Appellee,
and
North American Philips Corporation and N.V. Philips
Gloeilampenfabrieken, Counterdefendants-Appellees,
v.
SEARS ROEBUCK & CO., Defendant/Counterclaimant-Appellant,
and
Izumi Seimitsu Kogyo Kabushiki Kaisha,
Defendant/Counterplaintiff/Appellant.
 No. 93-1188.
 United States Court of Appeals,
Federal Circuit.
 May 10, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
July 6, 1995.*
 
 Garrard R. Beeney, Sullivan & Cromwell, New York City, argued for plaintiff/counterdefendant-appellee. With him on the brief was John L. Hardiman. Also on the brief were Sheldon Karon and Stanley C. Nardoni, Keck, Mahin & Cate, Chicago, IL. Of counsel was William E. Willis.
 Charles W. Saber, Dickstein, Shapiro & Morin, Washington, DC, argued for defendants/counterclaimant/appellant. With him on the brief were Gary M. Hoffman and Gabrielle S. Roth. Also on the brief was Edward L. Foote, Winston & Strawn, Chicago, IL.
 Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MAYER, Circuit Judge.
 Opinion for the court filed by Judge PAULINE NEWMAN. Dissenting opinion as to Part I filed by Senior Judge FRIEDMAN.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 We answer two questions certified for interlocutory appeal by the United States District Court for the Northern District of Illinois, in the course of litigation involving U.S. Philips Corporation, North American Philips Corporation, and N.V. Philips Gloeilampenfabrieken (together "Philips"); Sears, Roebuck & Company; and Izumi Seimitsu Kogyo Kabushiki Kaisha ("Izumi").[1] These questions are directed to various issues of estoppel, and also concern the vacatur by the Federal Circuit of a district court decision in related litigation. We affirm the rulings here certified.
 
 BACKGROUND
 
 2
 The related litigation started in 1984 in the United States District Court for the Southern District of Florida. The parties were Philips, the Windmere Corporation, and Izumi. Philips complained of patent infringement and unfair competition, and Izumi and Windmere raised defenses and counterclaims of patent misuse and antitrust violations. The Florida case was tried in 1986 as to all issues, Windmere and Izumi successfully arguing that it was incorrect and inefficient to separate the patent aspects from the antitrust and misuse counterclaims. The decision was appealed to the Federal Circuit. In accordance with this court's decision, U.S. Philips Corp. v. Windmere Corp., 861 F.2d 695, 8 USPQ2d 1885 (Fed.Cir.1988), cert. denied, 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989), and the Florida district court's order, the antitrust counterclaims and the unfair competition count were retried in Florida in 1990.
 
 
 3
 Philips and Windmere, but not Izumi, were parties to the retrial, which was decided in favor of Windmere. Philips appealed to the Federal Circuit. While the appeal was pending, Philips and Windmere reached a settlement. On their joint motion the Federal Circuit dismissed the appeal and vacated the Florida district court's judgment. U.S. Philips Corp. v. Windmere Corp., 971 F.2d 728, 23 USPQ2d 1709 (Fed.Cir.1992). The Federal Circuit denied Izumi's petition to intervene, on the ground that Izumi did not have standing to protest the vacatur of a decision to which Izumi was not a party. Id. at 730-31, 23 USPQ2d at 1710-11. The Supreme Court dismissed Izumi's petition for certiorari, Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp., --- U.S. ----, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993), holding that Izumi did not have standing to seek review of the question of vacatur since Izumi was not a party.
 
 
 4
 Meanwhile, in June 1985 Philips had filed suit against Sears, Roebuck & Co. and Izumi in the United States District Court for the Northern District of Illinois, asserting substantially the same patent infringement and unfair competition claims that were asserted in the suit Philips filed in 1984 in Florida against Windmere and Izumi. The patent was the same in the Illinois and the Florida cases, plus a design patent in the Illinois action. The accused product was the same Izumi-manufactured rotary shaver, which was sold by Windmere under the "Ronson" trademark and by Sears, Roebuck under the "Sears" trademark. In the Illinois action Izumi pled several antitrust counterclaims on the same grounds as were pled by Windmere in Florida; that is, that Philips violated the antitrust laws in its competition with Windmere, and that the litigation against Windmere and Izumi in Florida, and against Izumi in Japan, was sham.
 
 
 5
 The Florida case was tried in 1986 as to all issues. In 1987 the Illinois district court dismissed Izumi's antitrust counterclaims, holding that these counterclaims were mature at the time of the Florida litigation to which Izumi was a party, were litigated therein, and were compulsory to Izumi in the Florida action. After the Federal Circuit in 1988 required retrial of the antitrust counterclaims in Florida, the Illinois district court instructed Izumi, who had requested reconsideration of the dismissal, to include its antitrust counterclaims in the retrial. The Illinois court stated that Izumi "should direct its request to the Florida District Court where the retrial of the original cause is scheduled." U.S. Philips Corp. v. Sears Roebuck & Co., No. 85 C 5366, slip op. at 3, 1989 WL 56893 (N.D.Ill. May 19, 1989). Izumi did not direct a request to the Florida district court, despite this instruction. Thus Izumi was not a party to the 1990 retrial of the antitrust counterclaims in Florida, although Izumi reportedly continued as indemnitor to Windmere, Philips v. Windmere, 971 F.2d at 730, 23 USPQ2d at 1710, and Izumi's president testified concerning the unfair competition and antitrust claims. Declaration of William Androlla, counsel to Izumi, of record in U.S. Philips Corp. v. Windmere Corp., 971 F.2d 728, 23 USPQ2d 1709 (Fed.Cir.1992).
 
 
 6
 * THE ANTITRUST COUNTERCLAIMS
 
 
 7
 Izumi now seeks to try, in the Illinois action, the same antitrust counterclaims that were tried in the Florida action, stating that it has the right to do so. The Illinois court did not agree, and entered an interlocutory order pursuant to 28 U.S.C. Sec. 1292(b). The first question is as follows:
 
 
 8
 1. [W]hether Izumi is barred from pursuing such antitrust counterclaims on the basis that such counterclaims were compulsory counterclaims in a previously filed action of U.S. Philips Company et al. v. Windmere Corp. et al. which could not be asserted in this action, and whether Izumi has standing to raise these particular antitrust counterclaims.
 
 
 9
 * The antitrust counterclaims pled by Izumi in the Illinois suit include the same antitrust issues that were pled and fully litigated in the Florida action to which Izumi and Windmere were parties until the retrial. In both the Illinois and the Florida actions the principal antitrust claims were (1) predatory pricing by Philips in competition with Windmere, (2) Philips' purchase of the Schick trademark in 1981, whereby it was not available to Windmere, and (3) sham patent litigation by Philips in Florida and in Japan.
 
 
 10
 It is not controverted that all of these antitrust counterclaims were "ripe" throughout the period of the Florida action, for they were the same claims being litigated in that action. The Illinois court at least twice directed Izumi to participate in the Florida antitrust litigation. Izumi refrained from doing so, despite the reiterated directive from the Illinois court when the antitrust issues were to be retried in Florida. Thus the Illinois court held that these counterclaims were compulsory to Izumi in Florida.
 
 
 11
 Izumi argues that its antitrust counterclaims were not "compulsory" in terms of Fed.R.Civ.P. 13(a),[2] and therefore that it has the absolute right to choose when and where to litigate them. In this case, however, the issue is not simply whether Izumi's antitrust counterclaims were "compulsory" in the technical definition of this term, but whether they were required to be brought by Izumi on the particular facts of this case, wherein they were already being fully litigated in a suit to which Izumi was present as a party, then as a witness, and as indemnitor. It is not irrelevant that the Illinois district court instructed Izumi to participate in the litigation, and then the relitigation, of these counterclaims. Under these circumstances, we think that Izumi's interest in these counterclaims was indeed required to be raised by Izumi in the Florida action in which the counterclaims were already being litigated. Izumi does not have the absolute right to relitigate the same claims in Illinois, having voluntarily removed itself from the Florida litigation of these claims, and having declined to comply with the Illinois court's admonition to seek to reenter that litigation. This is particularly compelling because Izumi's antitrust counterclaims are based primarily on Philips' behavior in competition with Windmere, the precise subject of the Florida action.
 
 
 12
 In the Florida litigation Izumi and Windmere had successfully opposed Philips' attempt to sever the antitrust counterclaims from the patent issue. Izumi and Windmere, represented by the same counsel, argued to the Florida court that:
 
 
 13
 [Severance of patent infringement] would cause a waste of judicial time and impose an undue burden on Defendants in having to duplicate proof and witnesses at those trials, and require the impaneling of two juries. Defendants' Counterclaims, both as to misuse and antitrust violations to a significant degree encompass Plaintiffs' acquisition and use of the patent in suit and false assertion of alleged common law trademark rights as part of Plaintiffs' efforts to restrain legitimate competition and monopolize the relevant market.... By necessity Defendants' witnesses and proof on these issues are pertinent to all claims and would be duplicitous in both trials.
 
 
 14
 Defendants' Memorandum in Opposition to Plaintiff's Motion to Sever Counterclaims, at 6-7, U.S. Philips Corp. v. Windmere Corp., 680 F.Supp. 361 (S.D.Fla.1987). Windmere and Izumi prevailed on the motion, and the patent and antitrust issues were fully tried in the same trial.
 
 
 15
 To support its position that it is entitled to bring its counterclaims in a second forum, Izumi places weight on Southern Construction Co. v. Pickard, 371 U.S. 57, 60-61, 83 S.Ct. 108, 110-11, 9 L.Ed.2d 31 (1962), wherein the Court held that a compulsory counterclaim could be litigated in either of two pending actions that under the Miller Act were required to be brought in different jurisdictions. Southern Construction indeed permitted a choice of either forum; but it did not permit a choice of both forums. Southern Construction weighs against Izumi's attempt to relitigate in Illinois the claims that were fully litigated in the Florida action to which Izumi was a party, witness, and indemnitor.
 
 
 16
 Izumi also cites Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 671, 64 S.Ct. 268, 273-74, 88 L.Ed. 376 (1944), wherein the Court held that an antitrust defense could be asserted in a later action, if not raised by a related defendant in the first infringement action. However, Mercoid did not hold that the same antitrust claim could be fully litigated a second time, if it were raised and litigated by a related party in the first action.
 
 
 17
 Izumi does not dispute that its antitrust counterclaims are substantially the same as those that were litigated in Florida. On this basis, and in view of the Illinois district court's admonitions to Izumi, we discern no error in the district court's holding that Izumi could not, in these circumstances, retry the same antitrust counterclaims in Illinois.
 
 
 18
 Izumi and Windmere successfully obtained the litigation of the antitrust counterclaims together with the patent claim in Florida, by arguing that severance would be "a waste of judicial time" and an "undue burden on Defendants." See supra. This argument, and the ensuing full litigation of the antitrust counterclaims in Florida, create a form of "judicial estoppel" against Izumi's position that it now has the absolute right to relitigate the same claims against the same party. Judicial estoppel is an equitable principle that holds a party to a position on which it prevailed, as against later litigation arising from the same events. Eagle Foundation, Inc. v. Dole, 813 F.2d 798, 810 (7th Cir.1987).[3] See Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.")
 
 
 19
 The doctrine of judicial estoppel is directed to the preservation of the integrity of judicial proceedings by protecting against litigants who " 'play fast and loose with the courts.' " In re Cassidy, 892 F.2d 637, 641 (7th Cir.), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) (quoting Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir.1953)). See Levinson v. United States, 969 F.2d 260, 264 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). The Seventh Circuit has held that judicial estoppel may lie when "[e]ven though [the party] did not prevail on the appeal as a whole, he did prevail on the subsidiary question of what issues were to be decided by the court." Cassidy, 892 F.2d at 641.
 
 
 20
 We conclude that the criteria of judicial estoppel, as defined by the Seventh Circuit, were met. Izumi took the position that the antitrust counterclaims were compulsory in the Florida litigation, or at least that they should not be severed because the witnesses and proof would be duplicated. The Florida court adopted this position, and the claims were fully litigated in Florida. Izumi's present position that it had the right not to participate in the retrial of the issues that it insisted should be tried together, and can now require a duplicate trial of the identical issues, leaves us with the firm impression that Izumi has "played fast and loose with the courts." Although the Illinois court did not mention this ground, we think that judicial estoppel provides a sound rationale for affirmance of the district court's decision. See Cassidy, 892 F.2d at 641 (Because the doctrine of judicial estoppel "is intended to protect the courts rather than the litigants," it is proper for the appellate court to raise the estoppel "in an appropriate case.") Appellate review of the interlocutory order is not confined to the precise questions certified by the district court. "[A]ll questions material to the order are properly before the court of appeals." Nuclear Engineering Co. v. Scott, 660 F.2d 241, 246 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). See United States v. Connolly, 716 F.2d 882, 885 (Fed.Cir.1983) ("[T]he nature and scope of our review are not limited to the certified question, but ... we are free to consider all questions material to the trial court's order sustaining its jurisdiction."), cert. denied, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).
 
 B
 
 21
 Izumi also argues that it raised additional antitrust issues in Illinois, beyond those litigated in Florida. These additional issues are described as relating to the charge that Philips' litigation was "sham." Windmere and Izumi had alleged in Florida that Philips' patent infringement suit was sham, and also that Philips had improperly sued Izumi in Japan.
 
 
 22
 The charge that Philips' patent infringement suit in Florida was sham can not be deemed to have substance, for Philips prevailed in Florida on that issue. "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., --- U.S. ----, ---- n. 5, 113 S.Ct. 1920, 1928 n. 5, 123 L.Ed.2d 611 (1993). Further, the place to challenge litigation as sham is in the asserted sham litigation, to which Izumi was a party.
 
 
 23
 Izumi also presses the claim that Philips filed sham patent litigation in Japan in 1978. No substantive support for this assertion is before us, and no argument is offered that this is a different issue from that raised in the Florida action. We discern no error in the district court's holding that all of the antitrust counterclaims were barred.
 
 II
 STANDING
 
 24
 The district court also certified the sub-issue of whether Izumi has "standing" to raise these antitrust counterclaims. The district court made no decision on this issue. In view of our affirmance of the district court's action, and the silence of the district court on this issue, we need not and do not reach this question.
 
 III
 UNFAIR COMPETITION
 
 25
 Judgment in the Florida litigation was entered in favor of Windmere and against Philips on the unfair competition count. After the Federal Circuit vacated the Florida judgment, Philips v. Windmere, 971 F.2d 728, 23 USPQ2d 1709, the Illinois district court reinstated Philips' unfair competition count against Sears, ruling that the vacated Florida judgment did not have collateral estoppel effect. This led to the second certified question:
 
 
 26
 2. [W]hether under the law of the 7th Circuit, plaintiff N.A. Philips can be barred under collateral estoppel from again retrying the issue of trade dress infringement in view of the findings of the jury and the judgment of the Court in U.S. Philips Company et al. v. Windmere Corp. et al., where the final judgment of the Court was vacated predicated upon a settlement reached between Philips and Windmere.
 
 
 27
 * Sears argues that this court's vacatur of the Florida judgment was improper and should be reconsidered. However, the question of vacatur was finally decided, and is not subject to further review or collateral attack. Although Sears suggests that this vacatur was contrary to the Supreme Court's decision in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, --- U.S. ----, ----, 115 S.Ct. 386, 393, 130 L.Ed.2d 233 (November 8, 1994) (holding that vacatur by an appellate court, absent extraordinary circumstances, is not justified by mootness due to settlement), that holding does not impair the binding effect of this earlier decision. A final judgment is not voided if the precedent upon which it was based is later modified or overruled. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427-28, 69 L.Ed.2d 103 (1981). Thus it is unnecessary to decide whether, as Philips suggests, there were indeed extraordinary circumstances that justified vacatur in this case.
 
 B
 
 28
 Sears also argues that even if the Florida judgment were properly vacated, the Seventh Circuit would give the vacated judgment collateral estoppel effect. Collateral estoppel bars the relitigation of factual issues that were fully and fairly litigated and were the basis of final judgment in an action to which the person against whom the estoppel is sought was a party; there need not have been privity with the party now invoking the estoppel. Blonder-Tongue Labs., Inc. v. University of Illinois Found., 402 U.S. 313, 332-33, 91 S.Ct. 1434, 1444-45, 28 L.Ed.2d 788, 169 USPQ 513, 521 (1971); Commissioner v. Sunnen, 333 U.S. 591, 599-601, 68 S.Ct. 715, 720-721, 92 L.Ed. 898 (1948).
 
 
 29
 The district court did not agree, and indeed we do not think that Sears has accurately described the precedent of the Seventh Circuit. In Pontarelli Limousine, Inc. v. City of Chicago, 929 F.2d 339, 340-41 (7th Cir.1991) the Seventh Circuit held that a state court judgment that had been vacated pursuant to a settlement agreement did not preclude relitigating the issue in federal court, and added that this ruling embraced vacated federal as well as state judgments:
 
 
 30
 [The question on appeal] is whether the district judge erred in refusing to give the judgment in Chicago Courtesy collateral estoppel effect in this case.... He did not err. A vacated judgment has no collateral estoppel or res judicata effect under Illinois law, Matchett v. Rose, 36 Ill.App.3d 638, 649, 344 N.E.2d 770, 779 (1976) (or any other law, No East-West Highway Committee, Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir.1985)).
 
 
 31
 Pontarelli, 929 F.2d at 340. In No East-West Highway the court stated that a vacated judgment "has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." 767 F.2d at 24.
 
 
 32
 The Seventh Circuit in Pontarelli distinguished its earlier decision in In re Memorial Hospital of Iowa County, Inc., 862 F.2d 1299 (7th Cir.1988) (refusing to vacate a judgment), and stated that if the court in Memorial Hospital had vacated the judgment "it could not have been used in future litigation." Pontarelli, 929 F.2d at 340. Thus we discern no error in the district court's ruling that the vacated Florida judgment has no collateral estoppel effect.[4] That judgment is affirmed.
 
 
 33
 AFFIRMED.
 
 
 34
 FRIEDMAN, Senior Circuit Judge, dissenting in part.
 
 
 35
 I agree with and join part III of the court's opinion, which affirms the district court's reinstatement of N.A. Philips' unfair competition claim, and part II, which declines to reach the question whether Izumi has standing to raise the antitrust issues. I disagree, however, with the court's affirmance of the district court's dismissal of Izumi's antitrust counterclaim.
 
 
 36
 1. Rule 13 of the Federal Rules of Civil Procedure sets forth the standards governing counterclaims. Rule 13(a), captioned "Compulsory Counterclaims," provides that a claim "that arises out of the transaction or occurrence that is the subject matter" of the plaintiff's claim "shall" be filed in the litigation as a counterclaim. Rule 13(b), captioned "Permissive Counterclaims," permits the assertion in a counterclaim of "any claims against an opposing party not arising out of a transaction or occurrence that is the subject matter of the opposing party's claim." Failure to assert a compulsory counterclaim at the proper time bars the assertion of its claims in a subsequent suit. Martino v. McDonald's System, Inc., 598 F.2d 1079, 1083 (7th Cir.), cert. denied, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979); Employers Ins. of Wausau v. United States, 764 F.2d 1572, 1576 (Fed.Cir.1985). The corollary is that if the counterclaim is permissive, failure to assert its claims in the prior proceeding does not bar their assertion in the subsequent one. Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 928 (7th Cir.1986) cert. denied, 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987).
 
 
 37
 Congress thus has provided, as the touchstone for determining whether a counterclaim is compulsory or permissive, whether the claim it asserts "arises out" of the transaction or occurrence that is the subject matter of the claim in the complaint. Unless it so arises, the failure to file a counterclaim in the first suit does not bar the litigation of the claim in the second suit.
 
 
 38
 2. The sole ground upon which the district court dismissed the counterclaim was that it was a compulsory one, which Izumi was required to assert in the Florida case, and that Izumi's failure to do so barred it from asserting the counterclaim issues in the Illinois case. That was the question the district court certified for interlocutory review.
 
 
 39
 This court, however, does not answer that question. Instead, it affirms the district court on the alternative ground that the doctrine of judicial estoppel bars Izumi from now litigating those claims in the Illinois case because (1) the antitrust claims are the same ones that Windmere fully litigated in the Florida case, in which Izumi initially was a party, (2) Izumi could have litigated those claims there, and (3) the Illinois court twice told Izumi to do so. The court stresses that before the first trial in the Florida court, Izumi and Windmere jointly opposed severance of the antitrust and patent claims on the ground that severance "would cause a waste of judicial time and impose an undue burden on Defendants...."
 
 
 40
 The practical effect of the judicial-estoppel principle the court applies in affirming the district court's dismissal of Izumi's counterclaim is to treat the counterclaim as a compulsory one. The dismissal is upheld solely because Izumi should have litigated its counterclaim in the Florida case. Such dismissal is the consequence that follows the determination that a counterclaim not filed in the earlier case was compulsory.
 
 
 41
 The court reaches that result, however, without making any determination whether the counterclaim arose out of the same transaction or occurrence that was the subject of Philips' patent infringement suit in the Florida court against Windmere and Izumi. For all practical purposes, this means that the counterclaim is treated as compulsory without making the inquiry that Rule 13 prescribes as the basis for determining that question.
 
 
 42
 The court cites no case that directly supports its holding, which would allow a district court to dismiss a counterclaim because of failure to litigate it in a prior proceeding without first determining whether the counterclaim is permissive or compulsory. If Izumi's counterclaim is permissive--as I think it is--Rule 13 teaches that the claimant may litigate the counterclaim despite its failure to assert or litigate the claim in a prior case in which it could have done so.
 
 
 43
 The court's reliance on Izumi's prior assertion that trying the antitrust counterclaim separately "would cause a waste of judicial time and impose an undue burden on Defendants in having to duplicate proof and witnesses" ignores the fact that the Seventh Circuit has treated as permissive a counterclaim that "as a linguistic matter ... might arguably have been said to come out of the same transaction" as a claim litigated in an earlier suit, Colonial Penn Life Ins. v. Hallmark Ins., 31 F.3d 445, 448 (7th Cir.1994), even though the trial of the counterclaim in the second case would likely result in duplication of witnesses, testimony, and other evidence. See also Burlington Northern Railroad Co. v. Strong, 907 F.2d 707 (7th Cir.1990); Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n, 804 F.2d 390 (7th Cir.1986).
 
 
 44
 3. But even if a district court has the authority to dismiss a counterclaim in the circumstances of this case without determining whether it is permissive or compulsory, this is not an appropriate alternative ground for affirming the district court's judgment of dismissal.
 
 
 45
 The decision whether to dismiss on the ground that the court relies on requires the exercise of discretion by the district court. That, therefore, is a decision that the district court and not this court should make in the first instance. Where a district court abstains from deciding a case within its jurisdiction because of the pendency of a state court proceeding involving the same issue and the appellate court determines that the legal requirements for abstention have been made, the district court's decision to abstain is reviewed under an abuse-of-discretion standard. O'Neill v. City of Philadelphia, 32 F.3d 785, 790 (3d Cir.1994) (" 'We exercise plenary review over the legal determinations of whether the requirements for abstention have been met. Once we determine that the requirements have been met, we review a district court's decision to abstain under Younger abstention principles for abuse of discretion.' "); Kollsman v. Los Angeles, 737 F.2d 830, 833 (9th Cir.1984) cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (same). The same principle appears equally applicable to the ground on which the court affirms the district court's dismissal of the counterclaim here involved.
 
 
 46
 By determining that the district court properly dismissed the counterclaim on this ground, this court has precluded the district court from exercising its discretion in deciding the question. The district court here dismissed because it concluded that the counterclaim was compulsory, which meant that it had no choice but to dismiss. It cannot be said with certainty, however, that if the district court had determined that the counterclaim was permissive, it would have exercised its discretion in favor of dismissal.
 
 
 47
 In sum, the principle that an appellate court may affirm the judgment of a district court on any ground the record supports, even though that was not the basis of the district court's decision, cannot properly be applied where, as here, the alternative ground of affirmance involves the exercise of discretion that the district court has not undertaken.
 
 
 48
 That conclusion is underscored here because the court is reviewing an interlocutory order, which the district court certified for immediate appeal under 28 U.S.C. Sec. 1292(b) because of its determination that its order dismissing Izumi's counterclaim
 
 
 49
 involve questions of law as to which there are substantial grounds for differences of opinion and an immediate appeal from such Order may materially advance the ultimate termination of the present litigation. The specific issues are whether Izumi is barred from pursuing such counterclaims on the basis that such counterclaims were compulsory counterclaims in a previously filed action of U.S. Philips Company et al. v. Windmere Corp., et al. which could not be asserted in this action.
 
 
 50
 That, presumably, was the question the court understood it would decide when it authorized the appeal pursuant to that section. Although a court of appeals that authorizes such an appeal is not limited to deciding the certified question, Calhoun v. Yamaha Motor Corp., 40 F.3d 622, 626 (3d Cir.1994) cert. granted in part, --- U.S. ----, 115 S.Ct. 1998, 131 L.Ed.2d 999 (1995), affirmance of the district court order on another ground is inappropriate unless the other ground unequivocally requires affirmance. Because of the discretionary nature of the court's alternative-affirmance ground, this is not such a case.
 
 
 51
 4. I would, therefore, decide the certified question, hold that under Seventh Circuit law Izumi's counterclaim is permissive, not compulsory and reverse the district court's order insofar as it dismissed the counterclaim. Since the court does not address that issue, however, I do not discuss it.
 
 
 
 *
 Nies, Circuit Judge, did not participate in the vote
 1 U.S. Philips Corp. v. Sears Roebuck & Co., No. 85-C-5366, 1987 WL 26123 (N.D.Ill. December 1, 1987 (opinion), December 22, 1987 (recons. denied), May 19, 1989 (recons. denied with opinion), May 17, 1990 (recons. denied), October 13, 1992 (summary judgment entered on October 5, 1990 vacated and recons. denied with opinion), and November 6, 1992 (order certifying questions for immediate appeal)).
 
 
 [2]
 Rule 13(a) provides in part:
 A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
 The purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters". Warshawsky & Co. v. Arcata Nat'l Corp., 552 F.2d 1257, 1261 (7th Cir.1977); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Sec. 1409, at 46 (2d ed. 1990).
 
 
 [3]
 In applying judicial estoppel we look to the law of the Seventh Circuit, for the issue is not unique to patent cases. Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 5 USPQ2d 1769 (Fed.Cir.) (in matters not unique to patent law the Federal Circuit applies the perceived law of the circuit in which the case was tried), cert. denied, 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988). See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 665-66 & nn. 3, 4, 7 USPQ2d 1097, 1101 & nn. 3, 4 (Fed.Cir.1988) (applying Seventh Circuit law of judicial estoppel)
 
 
 [4]
 Philips also argued that the unfair competition issues raised against Sears are matters of Illinois law, and that the issues and burdens with respect to trade dress law are different in Illinois and in Florida. We express no view on the substantive correctness of this position, but take note that collateral estoppel can not lie when the issues or applicable law differ. Sunnen, 333 U.S. at 599-601, 68 S.Ct. at 720-721