COMMONWEALTH *vs.* CASPER FORTE
(and eleven companion cases[1]).

Norfolk. September 4, 1996. - November 4, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Imprisonment,* Enforcement of discipline. *Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy.

Discussion of the imposition of prison discipline for wrongdoing also punishable by criminal prosecution, in the context of the Federal prohibition against double jeopardy. [673-675]

Principles of double jeopardy did not preclude the imposition of prison discipline and criminal punishment for the same inmate misconduct, where prison discipline is a civil penalty with a remedial purpose and where the penalty imposed was not demonstrated by the clearest proof to be so extreme in relation to the wrongdoing as to be equivalent to a criminal penalty. [675-678]

INDICTMENTS found and returned in the Superior Court Department, six on February 23, 1994, one on April 6, 1994, two on June 8, 1994, and three on August 10, 1994, respectively.

Motions to dismiss indictments were heard by *J. Harold Flannery,* J.

The Supreme Judicial Court granted applications for direct appellate review.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

*Carol A. Donovan,* Committee for Public Counsel Services, for James Clark & another.

*Mark J. Gillis* for Casper Forte.

*Herbert P. Sklar* for Lance Hullum was present, but did not argue.

---

[1]Two indictments against Dana Carle; three against James Clark; three against Tony Gaskins; two against Lance Hullum; and one against Casper Forte.

*Scott Harshbarger*, Attorney General, & *Gail M. McKenna*, Assistant Attorney General, for the Commonwealth & others, amici curiae, submitted a brief.

*Thomas F. Reilly*, District Attorney, & *Carlene A. Pennell*, Assistant District Attorney, for the District Attorney for the Northern District, amicus curiae, submitted a brief.

WILKINS, C.J. Each defendant successfully moved on double jeopardy grounds to dismiss indictments charging him with assault or assault and battery against a prison correction officer (and, in one case, assault with intent to murder). Each defendant argued that he had already been sentenced to disciplinary segregation pursuant to prison disciplinary procedures for the same allegedly wrongful conduct on which the indictments were based. A Superior Court judge allowed the motion of the defendant Forte, filing a memorandum of decision, and subsequently he allowed the motions of the other defendants by reference to his action in Forte's case. The judge ruled that confinement to a department disciplinary unit (DDU) was punishment for the purpose of the double jeopardy clause of the Fifth Amendment to the Constitution of the United States. In his view, a subsequent criminal prosecution based on the same wrongdoing was barred by the double jeopardy clause.

The Commonwealth appealed from the dismissal of the indictments, and we granted the defendants' applications for direct appellate review. We vacate the orders of dismissal because it is now clear, in light of the recent opinion in *United States* v. *Ursery*, 116 S. Ct. 2135 (1996), that double jeopardy principles do not in all instances bar both the imposition of prison discipline and a criminal prosecution for the same wrongful conduct.

Major prison discipline in Massachusetts may include a "[s]entence to a Department Disciplinary Unit for a period not exceeding ten years." 103 Code Mass. Regs. § 430.25 (3) (1993). A DDU is defined as "a restricted area or areas designated by the Commissioner to which an inmate has been sentenced by a special hearing officer." 103 Code Mass. Regs. § 430.06 (1993). The judge made no findings concerning the specific conditions under which an inmate is held in a DDU, and the record does not describe the conditions of confinement in a DDU. When the judge decided that confinement in a DDU, with harsher conditions of confinement than those of

the general prison population or a department segregation unit, was punishment for Federal double jeopardy purposes, he did not consider the severity of that penalty by the standard that the Supreme Court has set for deciding that a civil penalty, because of its harshness, may in fact be punishment for Federal double jeopardy purposes. *United States* v. *Ursery, supra* at 2144-2145.[2]

We are concerned here with the prohibition against double jeopardy only as a Federal constitutional right. The defendants do not argue that the Constitution of the Commonwealth entitles them to greater protection than does the double jeopardy clause. The Commonwealth's Constitution has no explicit double jeopardy provision. Certain double jeopardy concepts are no doubt embraced within the Massachusetts Constitution's due process of law provisions, but those provisions do not, at least in this case, provide protection greater than the explicit protections of the Federal double jeopardy clause.

Protection against double jeopardy was a common law right at the time the Massachusetts Constitution was adopted. See *Commonwealth* v. *Roby,* 12 Pick. 496, 501 (1832). We may not, however, properly apply common law double jeopardy principles in this case, even if they are beneficial to the defendants, because the criminal penalties that might be imposed are authorized by statute and the prison discipline already imposed was based on a regulation authorized by statute. We focus our attention, therefore, solely on the double jeopardy clause of the Constitution of the United States.

The Federal double jeopardy clause may have no application to prison discipline and a criminal prosecution based on the same facts. See *Garrity* v. *Fiedler,* 41 F.3d 1150, 1151-1153 (7th Cir. 1994), cert. denied, 514 U.S. 1044 (1995) (changes in conditions of incarceration do not constitute second punishment); *United States* v. *Newby,* 11 F.3d 1143, 1146 (3d Cir. 1993) ("We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison disci-

---

[2]In denying the Commonwealth's motion for reconsideration, the motion judge observed that "it might be preferable to reconsider the matter in the form of an evidentiary hearing which could delve, first-hand and more substantively, into the DDU program." The motion judge was in no position to pursue this course because on the day following his denial of the motion to reconsider he became a Justice of the Appeals Court.

pline"), cert. denied sub nom. *Barber* v. *United States,* 511 U.S. 1087, and 513 U.S. 834 (1994). This is because discipline imposed on an inmate for misconduct in prison fairly may be viewed as a change in the conditions of his confinement for the crime or crimes that placed him in prison in the first place. Cf. *Ralston* v. *Robinson,* 454 U.S. 201, 220 n.14 (1981) (imposition of confinement for violation of terms of probation raises no serious double jeopardy problem because "offender has, by his own actions, triggered the condition that permits appropriate modification of the terms of confinement"); *Commonwealth* v. *Holmgren,* 421 Mass. 224, 227 n.1 (1995) (probation revocation is not punishment for commission of a subsequent crime but rather "a remedial sanction arising from the sentence imposed for the earlier offense"). Federal courts have consistently concluded that no serious double jeopardy question is raised when a criminal prosecution is maintained based on the same facts that led to the revocation of a defendant's probation or parole. See, e.g., *United States* v. *Woodrup,* 86 F.3d 359, 361-362 (4th Cir.), cert. denied, 117 S. Ct. 332 (1996); *United States* v. *Soto-Olivas,* 44 F.3d 788, 789 (9th Cir.), cert. denied, 515 U.S. 1127 (1995); *United States* v. *Meeks,* 25 F.3d 1117, 1122-1123 (2d Cir. 1994). The case before us is not however fully analogous to the circumstance of both a criminal prosecution and revocation of parole or probation because, in the case before us, the convicted criminal did not assent to the condition under which the terms of his confinement might be changed because of his commission of a crime.

Even if the double jeopardy clause has possible application to prison discipline and criminal charges arising out of the same facts, decided cases provide no support for the defendants' double jeopardy claim. In *Commonwealth* v. *Boyd,* 367 Mass. 169, 176 (1975), we said that "we know of no decisions in which the combination of administrative punishment of an inmate and his criminal conviction has been held to result in double jeopardy." Opinions of the United States Courts of Appeals have unanimously agreed that the double jeopardy clause does not preclude both prison discipline and a criminal prosecution (and a further sentence) based on the same acts. See *Garrity* v. *Fiedler,* 41 F.3d 1150, 1152 (7th Cir. 1994), citing opinions from eight other circuit courts of appeals. See also *United States* v. *Galan,* 82 F.3d 639, 640 (5th

Cir.), cert. denied, 117 S. Ct. 179 (1996); *United States* v. *Brown*, 59 F.3d 102, 103-105 (9th Cir. 1995); *United States* v. *Hernandez-Fundora*, 58 F.3d 802, 806-807 (2d Cir.), cert. denied, 515 U.S. 1127 (1995). The reasoning of these opinions, with which we agree, is that prison authorities have a right to make changes in the conditions of a wrongdoer's confinement in order to maintain institutional security and order; that prompt discipline within the penal system brings home to the wrongdoer and other inmates the importance of good conduct; and that there is no reason why the State must make a choice between criminal punishment and institutional discipline. In the choice of discipline, the courts have deferred to prison authorities on what discipline is necessary and proper to preserve order and encourage good conduct. See *Bell* v. *Wolfish*, 441 U.S. 520, 547-548 (1979); *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 769 (1996).

Our conclusion that the double jeopardy clause does not generally forbid both prison discipline and criminal punishment for the same inmate misconduct is supported by the views recently set forth in *United States* v. *Ursery*, 116 S. Ct. 2135 (1996). That opinion, which was not available to the motion judge, clarified uncertainties that were perceived in *United States* v. *Halper*, 490 U.S. 435 (1989); *Austin* v. *United States*, 509 U.S. 602 (1993); and *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U.S. 767 (1994).[3] In its *Ursery* opinion, the Supreme Court held that civil in rem forfeitures were not punishment for the purposes of the double jeopardy clause. *United States* v. *Ursery, supra* at 2147. Consequently, a defendant could properly be convicted of a crime, such as unlawfully selling a controlled substance, and, in a civil proceeding, also suffer forfeiture of property used in the unlawful activity.

The imposition of prison discipline is a civil proceeding and is, therefore, subject to the same general principle set forth in the *Ursery* opinion. Certainly, the imposition of incarceration in a DDU has a punitive aspect. It also serves, however, the deterrent purpose of demonstrating to all other inmates that good behavior is expected of them and that, if

---

[3]In *Opinion of the Justices, post* 1201 (1996), the Justices discussed the *Ursery* opinion and noted that the Supreme Court had explicitly repudiated an earlier statement that "found a civil sanction to be punitive if it could not 'fairly be said solely to serve a remedial purpose.' " *Id.* at 1221.

they do not conform to prison rules, there will be adverse consequences. The DDU in which the defendants were confined was established pursuant to 103 Code Mass. Regs. § 430.00 (1993), entitled "Disciplinary Proceedings," "to maintain order and to further the social integration of inmates." 103 Code Mass. Regs. § 430.01. See G. L. c. 127, § 39 (1994 ed.). In the hierarchy of wrongs that might be committed in prison, a physical assault on a prison guard ranks among the most serious, and the discipline imposed may be concomitantly severe.

The defendants argue nevertheless that confinement to a DDU has no remedial purpose and is imposed solely for punitive purposes. A civil fine, imposed solely for the purpose of punishment after a criminal conviction and sentence, would violate the double jeopardy clause. *Kvitka* v. *Board of Registration in Medicine,* 407 Mass. 140, 145, cert. denied, 498 U.S. 823 (1990). The defendants argue that, when in 1992, the Commissioner of Correction (commissioner) announced the creation of the DDU, he indicated that DDU confinement would be solely for punitive purposes. The commissioner stated then, in a memorandum to all inmates and staff, that "[a] sentence to the DDU is designed to punish and thereby deter serious misbehavior by inmates in the Department's general population." The commissioner's statement certainly demonstrates that confinement in the DDU serves two related purposes: a punitive purpose and also the purpose of deterring misconduct by other inmates. The Commonwealth is not limited, in any event, in its justification for the imposition of DDU confinement, to the commissioner's 1992 statement of purposes. The effect of the confinement as well as the purpose stated in the regulations themselves are relevant considerations in guiding us to arrive at the conclusion that confinement to the DDU has a remedial purpose. See *Opinion of the Justices, post* 1201, 1223-1224 (1996).

The *Ursery* opinion recognized that, on the clearest proof, a civil penalty might be shown to be so extreme in purpose or effect as to be equivalent to a criminal proceeding and the penalty, therefore, subject to the double jeopardy clause. *United States* v. *Ursery, supra* at 2148. See *Luk* v. *Commonwealth,* 421 Mass. 415, 422 (1995). An inmate confined to the DDU no doubt lives under quite harsh conditions. The judge did not explicitly consider the question whether the

penalty imposed on any defendant was so extreme in purpose or effect as to be equivalent to a criminal penalty. On this record, it is not demonstrated by the clearest proof that DDU confinement is so extreme as to any defendant in relation to his wrongdoing that the double jeopardy clause is implicated, assuming, without deciding, that prison discipline, at least under some extreme circumstances, may invoke double jeopardy principles.

Any constitutional challenge to confinement in the DDU, other than the defendants' double jeopardy claim, is not an appropriate ground for the dismissal of the indictments.

The orders allowing the defendants' respective motions to dismiss the indictments are vacated, and the cases are remanded to the Superior Court.

*So ordered.*