Connolly, J.
The above-mentioned defendant is charged with mayhem, G.L.c. 265, §14, and assault and battery with a dangerous weapon, G.L.c. 265, §§15A and 15B. This court, on October 7, 1997, conducted a hearing on the defendant’s motion to dismiss his indictment for mayhem. As grounds for the dismissal, the defendant argues that while he was *602 a pretrial detainee at the Suffolk County House of Corrections he was tried and punished for the allegations set forth in the mayhem indictment. He further contends that the punishment he received was so extreme in purpose and effect as to be the equivalent to a criminal proceeding and the penalties meted out to him violated the constitutional protections of the double jeopardy clause of the Fifth Amendment to the United States Constitution.
FINDINGS OF FACT
The defendant was a pretrial detainee at the Suffolk County House of Corrections assigned to the six-four unit, a self-contained general holding area within the jail. Inside the six-four unit are attorney/client rooms, showers, visiting rooms, food distribution and an outside recreation deck. On November 6, 1992, there was an incident involving between eight and a dozen inmates where three or four jail officers were attacked inside the six-four unit. The defendant was one of the inmates involved in the incident. Following the incident, the perpetrators were transferred to the six-one unit, which is a segregation unit.
The six-one unit is basically set up the same as the six-four unit. Each room contains a toilet/sink combination with an overhead light, a bed frame with a mattress, blankets, sheets and a pillow. There is a counter top on or adjacent to or just below an outside window, which allows for sunshine and natural daylight to shine in. Inmates in the six-one unit do not receive any restrictions on meals, they are fed the same as the other inmates.
Each inmate in the six-one unit is assigned to an individual cell. The only privilege the defendant lost was his out-of-cell privilege. While confined in the six-one unit, the defendant was only allowed out of his cell for one hour per day. During that time he was handcuffed.
The defendant did not lose his visiting or canteen privileges. He was allowed access to the telephone and to his attorney. The defendant was not denied medical services. Immediately following the incident with the guards, the defendant received regular visits from the nurse. He had the opportunity to be seen by a doctor and, in fact, he refused to meet with a doctor on November 10, 1992.
RULINGS OF LAW
“The Double Jeopardy Clause of the Fifth Amendment provides that no person shall ‘be subject for the same offense to be twice put in jeopardy of life or limb.’ ” Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 306 (1984). The guarantee is applicable to the States through the Fourteenth Amendment. Id.
The Supreme Court cases have recognized three separate guarantees embodied in the Double Jeopardy Clause: “It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense.” Id., at 306-07. The defendant contends that the allegations set forth in the indictment for mayhem are identical to the punishment that he received when he was placed in the six-one unit and as such are impermissible under the third criteria enunciated in Lydon.
This court’s analysis is controlled by Commonwealth v. Forte, 423 Mass. 672 (1996). There our Supreme Judicial Court held that sentences to the departmental disciplinary unit (DDU) of a State prison did not bar, on double jeopardy ground, the subsequent criminal prosecutions of the defendants in that case for the same offenses. The Court concluded that confinement in the DDU served two related purposes: a punitive purpose and also the purpose of deterring misconduct by other inmates. Id., at 677. Accordingly, the Court found “that confinement to the DDU has a remedial purpose.” Id. The Supreme Judicial Court reasoned “that prison authorities have a right to make changes in the conditions of a wrongdoer’s confinement in order to maintain institutional security and order; that prompt discipline within the penal system brings home to the wrongdoer and other inmates the importance of good conduct; and that there is no reason why the State must make a choice between criminal punishment and institutional discipline.” Id., at 676.
The segregation unit involved in this case, like the disciplinary unit in Forte, serves deterrent and remedial purposes as well as a punitive purpose. See Commonwealth v. Matthews, Mass. 1007 (1997). The defendant and all the perpetrators of the assault on the jail officers were transferred to the six-one unit. The clear purposes of this measure was to punish the perpetrators and deter further assaults against the jail officers by the general population.
The Supreme Judicial Court also recognized that, “on the clearest proof, a civil penalty might be shown to be so extreme in purpose or effect as to be equivalent to a criminal proceeding and the penally, therefore, subj ect to the double jeopardy clause. ” Commonwealth v. Forte, 423 Mass. at 677, citing United States v. Ursery, 116 S.Ct. 2135, 2148 (1996). This is not such a case. The only loss of privilege suffered by the defendant was his out-of-cell privilege. As a result of which, his time outside of his cell was limited to one hour per day and during that time he was handcuffed. Such a penalty is not so extreme in purpose or effect. The defendant did not lose his right to visitors, phone calls or medical care. Moreover, he did not lose his canteen privileges. Accordingly, this court finds, as a matter of fact, that the defendant’s confinement in the six-one unit was not so extreme as to be equivalent to a criminal penalty.
ORDER
It is therefore ORDERED that the defendant’s motion to dismiss the indictment for mayhem, G.L.c. 254, §14 is DENIED.