# United States Court of Appeals
## For the First Circuit

No. 02-2325

ARTHUR JACKSON,

Petitioner, Appellant,

v.

WILLIAM COALTER,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

R. Matthew Rickman, with whom Frank A. Libby, Jr. and Kelly, Libby & Hoopes, P.C. were on brief, for petitioner.
Dean A. Mazzone, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, was on brief, for respondent.

July 28, 2003

**SELYA**, **Circuit Judge**.  This convoluted habeas case presents a tangled scenario that gives rise to difficult questions of justiciability and constitutional law.  The case has taken innumerable twists and turns.  It began when the petitioner pleaded guilty to a charged crime, started serving a state-imposed sentence, and then was charged with a second, more serious crime — one potentially incompatible with the first.  He responded by moving to vacate his original conviction.  The state court granted his motion.

On reflection, the petitioner moved to reinstate that conviction and attempted instead to raise a double jeopardy defense to the second charge.  The state courts (trial and appellate) rebuffed these initiatives, and the petitioner repaired to the federal courts.  The district court denied the petitioner's application for a writ of habeas corpus, ruling that the vacation of the first conviction thwarted any claim of double jeopardy.

If that were not complicated enough, the petitioner then struck out in a new direction.  During the pendency of the federal habeas proceeding, he pleaded guilty to the second charge in exchange for a reduced sentence.  After learning what had transpired, the district court rescinded its earlier ruling and dismissed the habeas petition as moot.

The petitioner assails both of the district court's orders.  We agree with the petitioner that, in the peculiar

circumstances of this case, his guilty plea to the second charge did not render the habeas proceeding moot. Nevertheless, we affirm the denial of habeas relief. Adhering to the strictures of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), we conclude that the state courts neither acted contrary to, nor unreasonably applied, Supreme Court precedent when they refused to honor the petitioner's claim of double jeopardy.

## I. BACKGROUND

During the afternoon of March 20, 1996, an armed intruder entered a doctor's office in Jamaica Plain and departed with, among other things, a checkbook. Later that day, police in Cambridge arrested petitioner-appellant Arthur Jackson while he was attempting to cash one of the purloined checks. The locales are significant because prosecutorial responsibility in Massachusetts operates on a county-by-county basis. See Mass. Gen. Laws ch. 12, §§ 12-32. Jamaica Plain (where the robbery took place) is in Suffolk County but Cambridge (where the attempted check-passing occurred) is in Middlesex County.

When the Middlesex County District Attorney charged the petitioner with receiving stolen property (the purloined checks), he entered a guilty plea to that charge in Cambridge District Court. The court imposed a thirty-month sentence (one year to

serve and the balance suspended). The petitioner began serving his sentence on April 4, 1996.

One day later, the Suffolk County District Attorney swore out a criminal complaint charging the petitioner with armed robbery in connection with the March 20 heist. The petitioner first learned of this charge five months into his incarcerative term when an outstanding arrest warrant (which had never been served) rendered him ineligible to participate in a work-release program. Fearing that his guilty plea to receiving stolen property would be used against him at a trial for armed robbery, the petitioner filed a pro se motion on November 25, 1996. The motion sought to withdraw the earlier plea, annul the petitioner's conviction, and set the stage for a new trial on the original charge.[1] The gist of the petitioner's argument was that the presiding judge in the Cambridge District Court had conducted an insufficient colloquy and, therefore, had erred in accepting his guilty plea. See, e.g., Commonwealth v. Lopez, 690 N.E.2d 809, 812 (Mass. 1998) (discussing the constitutional requirements for acceptance of a guilty plea); see also Mass. R. Crim. P. 12(c) (establishing certain procedural prerequisites for same).

On December 5, 1996, the petitioner was summonsed to the West Roxbury District Court for arraignment on the Suffolk County

---

[1]For ease in reference, we hereafter refer to this motion simply as a motion to vacate the conviction.

complaint. One week later, a Suffolk County grand jury indicted him for armed robbery. The new indictment included an allegation that the petitioner was a habitual offender. If proven, this allegation would require a sentence of life imprisonment. See Mass. Gen. Laws ch. 265, § 17; id. ch. 279, § 25.

On December 28, 1996, the petitioner completed serving the incarcerative portion of his sentence for receiving stolen property. His freedom was short-lived. When he appeared the next week at Suffolk Superior Court for a pretrial hearing on the armed robbery charge, he was detained. His detention lasted from that date (January 2, 1997) until his eventual release, under circumstances that we shortly shall explain, on July 2, 2002.

On January 14, 1997, the petitioner appeared pro se in the Cambridge District Court for a hearing on his previously filed motion to vacate his conviction for receiving stolen property.[2] At the request of court personnel, an itinerant attorney consulted with the petitioner and informed the presiding judge that the petitioner "really need[ed] to be represented by counsel in this case." The lawyer urged the court to withhold any action until the petitioner's court-appointed counsel in the armed robbery case could appear. Speaking for himself, the petitioner pressed for

---

[2]Since the motion amounted to a collateral attack on a final judgment of conviction, the petitioner was not entitled as of right to court-appointed counsel in connection with it. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Commonwealth v. Conceicao, 446 N.E.2d 383, 387 (Mass. 1983).

vacation of the receiving stolen property conviction, emphasizing that he had not been given proper warnings in advance of his guilty plea. The court announced its intention to listen to a tape recording of the plea proceeding and continued the hearing until January 30 so the petitioner's attorney could attend.

For reasons that remain obscure, neither the petitioner nor his court-appointed counsel in the armed robbery case appeared at the January 30 hearing. The court, however, had reviewed the tape of the plea proceeding and found the colloquy inadequate. Stating that "I am the one who erred, and I am correcting the error now," the presiding judge vacated the petitioner's conviction for receiving stolen property. The district attorney's office eventually declined to reprosecute the receiving stolen property charge.

The armed robbery case remained velivolant and, after several months had passed, the petitioner began to have second thoughts about his strategy. On November 19, 1997, he filed a counseled motion in the Cambridge District Court requesting the reinstatement of his prior conviction. At around the same time, he filed a counseled motion in the Suffolk Superior Court seeking dismissal of the armed robbery charge on double jeopardy grounds. Both motions were denied. The petitioner then appealed the double jeopardy ruling to the Massachusetts Supreme Judicial Court (SJC). A single justice of the SJC, acting pursuant to Mass. Gen. Laws ch.

211, § 3, ruled that the petitioner's interlocutory appeal was immediately reviewable but nonetheless rejected the appeal on the merits. On October 14, 1999, the full court affirmed that decision. See Jackson v. Commonwealth, 717 N.E.2d 1001, 1005 (Mass. 1999).

While still awaiting trial in the armed robbery case, the petitioner filed a federal habeas petition. The federal district court held a hearing on March 7, 2002, and took the matter under advisement. On July 2, 2002, the petitioner and Suffolk County prosecutors reached an accord anent the armed robbery charge: in exchange for the petitioner's guilty plea, the Commonwealth agreed to abandon the habitual offender allegation and recommend a "time-served" sentence. The Suffolk Superior Court accepted the plea, imposed the agreed sentence, and released the petitioner on a term of supervised probation. The federal district court later stated that it was not notified of these developments when they occurred.[3]

On July 30, 2002, the federal district court, still unaware of the recent plea, denied the petition for habeas relief

---

[3]The court apparently suspected that the failure of notification resulted from inadvertence. After all, the parties were represented by different counsel in the two cases (i.e., the petitioner was represented by one lawyer in the armed robbery case and by a second, unrelated lawyer in the federal habeas case, whereas the Commonwealth was represented by the district attorney's office in the former case and by the Attorney General in the latter case). For their part, the petitioner's lawyers contend that they did furnish contemporaneous notice of the guilty plea to the district court. We need not resolve this conflict.

on the merits. See Jackson v. Coalter, 2002 WL 1760879, at *4 (D. Mass. July 30, 2002). Approximately two weeks later, the Commonwealth moved to reconsider the order. In that motion, the Attorney General informed the court of the plea bargain in the armed robbery case and argued that the consummation of that bargain rendered the habeas petition moot. The district court agreed; in successive orders, it first vacated its earlier merits decision and then dismissed the habeas petition as moot.

The petitioner seasonably appealed both the order of dismissal on the merits and the subsequent order declaring the controversy moot. The appeal is properly before us, as the district court has granted a broadly worded certificate of appealability. See 28 U.S.C. § 2253(c).

## II. ANALYSIS

To prevail in this appeal, the petitioner must overcome two adverse rulings. Common sense suggests that we address these rulings in reverse chronological order.

### A. Mootness.

We afford plenary review to the district court's determination that the petitioner's guilty plea to the armed robbery charge rendered his habeas petition moot. See Simpson v. Matesanz, 175 F.3d 200, 205 (1st Cir. 1999); see also Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994). Initially, however, we deal with a pair of preliminary matters.

First, we note that even though the guilty plea to the armed robbery charge ended the petitioner's incarceration, he remains under supervised probation. Thus, he is still sufficiently "in custody" to pursue federal habeas relief. See Lefkowitz v. Fair, 816 F.2d 17, 19 (1st Cir. 1987) (collecting cases); see generally Jones v. Cunningham, 371 U.S. 236, 240 (1963) (holding that the "in custody" requirement for habeas relief necessitates only "restraints on a man's liberty, restraints not shared by the public generally").

Second, the petitioner filed his habeas application under 28 U.S.C. § 2254. The district court perspicaciously observed that the petitioner was still awaiting trial on the armed robbery charge when he sought habeas relief; that his status was, therefore, that of a pretrial detainee; and that this circumstance called into question the appropriateness of the jurisdictional allegation. See Jackson v. Coalter, 2002 WL 1760879, at *1; see also 28 U.S.C. § 2254(a) (indicating that section 2254 relief is available only to "a person in custody pursuant to the judgment of a State court"). The district court nonetheless proceeded to adjudicate the matter on the basis that, under 28 U.S.C. § 2241(c)(3), a writ of habeas corpus is potentially available to any state prisoner "in custody in violation of the Constitution or laws . . . of the United States." This problem does not concern us inasmuch as the

petitioner has now pleaded guilty to the armed robbery charge, and his guilty plea subjected him to a state court judgment.

Against this backdrop, we turn to the question of mootness. A habeas petition is moot if it fails to present a live case or controversy. See Spencer v. Kemna, 523 U.S. 1, 7 (1998); see generally Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) (explaining that the "case-or-controversy requirement subsists through all stages of federal judicial proceedings"). The question before us is whether the petitioner's guilty plea foreclosed his habeas claims (and, thus, rendered his petition moot).

In arguing the affirmative of the proposition, the Commonwealth chiefly relies upon the Supreme Court's decision in United States v. Broce, 488 U.S. 563 (1989). In Broce, the defendants were charged with rigging two separate sets of bids for state highway contracts. Id. at 565. They eventually pleaded guilty to two counts of conspiracy. Id. at 566. After another court, trying a different group of defendants, had ruled that the rigged bids were part and parcel of a single conspiracy, the Broce defendants mounted a collateral attack on their second conviction. Id. at 567. The Supreme Court concluded that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." Id. at 569. Consequently, the defendants' guilty pleas foreclosed any opportunity to revisit the factual

-10-

predicate upon which their convictions rested.  See id. at 571 ("When respondents pleaded guilty to two charges of conspiracy on the explicit premise of two agreements which started at different times and embraced separate objectives, they conceded guilt to two separate offenses.").

The Commonwealth says that Broce stands for the black-letter rule that a defendant's guilty plea pretermits any subsequent collateral attack aimed at negating the resulting conviction.  That formulation, however, reaches beyond the holding in Broce, which contemplated "exception[s] to the rule barring collateral attack on a guilty plea."  Id. at 574.  The exceptions include guilty pleas such as that discussed in Menna v. New York, 423 U.S. 61 (1975) (per curiam), that is, pleas entered in response to charges "which the State may not constitutionally prosecute." Id. at 62 n.2.

Menna is of considerable interest here.  In that case, the defendant, having been granted immunity, refused to testify and was sentenced for contempt of court.  Id. at 61.  After his release, the state indicted him for once again refusing to answer the same questions.  Id.  He pleaded guilty to this criminal charge but then appealed his conviction on double jeopardy grounds.  Id. at 61-62.  The state courts ruled that his guilty plea waived his right to assert a double jeopardy claim.  Id. at 62.  The Supreme

Court reversed, holding that a guilty plea does not forgive the unconstitutionality of an indictment.  Id.

The Menna Court emphasized that a guilty plea acts primarily to "remove[] the issue of factual guilt from [a] case."  Id. at 62 n.2.  In most instances, factual guilt is the only pertinent question and "[a] guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt."  Id.  A guilty plea, however, does not bar a defendant from contending "that the State may not convict [him] no matter how validly his factual guilt is established."  Id.

The Commonwealth suggests that Broce trumps Menna.  We reject this suggestion.  The guilty pleas in Broce admitted factual elements that were logically inconsistent with the defendants' subsequent allegations of a constitutional breach.  See Broce, 488 U.S. at 570-71.  In contrast, the defendant in Menna disputed the very legitimacy of a second indictment; his guilty plea admitted no factual predicate that sufficed to make irrelevant his double jeopardy claim.  See Menna, 423 U.S. at 61.  The decision in Broce did not overrule Menna, see Broce, 488 U.S. at 574 ("Menna v. New York . . . has no application to the case at bar."), and the decision in Menna remains good law.  Therefore, we must adhere to it.  See United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 n.19 (1st Cir. 2003) ("Our marching orders are clear:  follow

-12-

[Supreme Court] decisions until the Supreme Court overrules them.") (quoting United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 608 (7th Cir. 2000)).

The distinction between Broce and Menna is critically important in the case at hand. Here, as in Menna, the petitioner's challenge implicates the legitimacy ab initio of the second indictment. He contends, in effect, that even assuming his factual guilt, the Commonwealth could not constitutionally prosecute him on the armed robbery charge. Menna teaches that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." Menna, 423 U.S. at 62. The petitioner's thesis is that the Commonwealth was so precluded here, and, thus, acted unconstitutionally when it brought the second indictment. This thesis — the validity of which we shall test in the next section of this opinion — presents a live controversy. See id. at 62 n.2 (noting that "a plea of guilty to a charge does not waive a claim that — judged on its face — the charge is one which the State may not constitutionally prosecute"). Consequently, the habeas case is not moot. See Spencer, 523 U.S. at 7-8 (holding that a habeas petitioner satisfies the case or controversy requirement so long as he suffers from or is threatened

-13-

by a concrete injury that is traceable to allegedly improper state action and redressable by the invalidation of that action).

### B. **The Merits**.

We divide our discussion of the merits into three segments corresponding to the petitioner's three principal claims.

1. **The Double Jeopardy Claim**. We review the SJC's denial of the petitioner's double jeopardy claim under the constraints of the AEDPA. Consequently, we may grant relief thereunder only if the state court adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

The relevant provision for purposes of this appeal is section 2254(d)(1). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court fleshed out a petitioner's obligations under that section and outlined the narrow circumstances in which federal habeas courts are permitted to disturb state convictions. The Court interpreted "contrary to" to mean "diametrically different" or "mutually opposed." Id. at 405. Therefore, a state court decision is "contrary to" established Supreme Court precedent if the state court manages to "arrive[] at a conclusion opposite to

that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

As to the other facet of section 2254(d)(1), the Court said that an "unreasonable application" of Supreme Court case law occurs if "the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This type of scenario may emerge when a state court either "unreasonably extends a legal principle . . . to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. The Court emphasized, however, that not every incorrect application of federal law amounts to an unreasonable application of federal law. Id. at 410. The difference is one of degree. See McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (requiring an "increment of incorrectness" in the state court ruling that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court"). It follows, then, that a habeas petitioner must do more than merely identify an incorrect result.

We assess the petitioner's challenge to the SJC's double jeopardy ruling under this restrictive framework. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S.

Const. amend. V, cl. 2.  This proviso affords protection in three different types of situations:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

United States v. Ortiz-Alarcon, 917 F.2d 651, 653 (1st Cir. 1990) (quoting N. Carolina v. Pearce, 395 U.S. 711, 717 (1969)); accord United States v. Morris, 99 F.3d 476, 478 (1st Cir. 1996); United States v. Stoller, 78 F.3d 710, 714 (1st Cir. 1996).

Building on the second of these three safeguards, the petitioner constructs the following hypothesis:  (1) he pleaded guilty to receiving stolen property and that plea ripened into a conviction; (2) from and after the date of that conviction, double jeopardy protections precluded the Commonwealth from indicting him for a mutually exclusive crime (for that would constitute "the same offense"); and (3) the crimes of receiving stolen property and armed robbery, when involving the same objects, are mutually exclusive.  Hence, the Double Jeopardy Clause forbade the Commonwealth from initiating the armed robbery prosecution.

The first element on which the petitioner's hypothesis rests is unassailable:  at least in these circumstances, a guilty plea is itself a conviction.  See Kercheval v. United States, 274 U.S. 220, 223 (1927).  The SJC assumed, without deciding, the validity of the third element.  See Jackson, 717 N.E.2d at 1003 &

n.4 (suggesting that Massachusetts case law would deem the crimes of receiving stolen property and armed robbery of the same property to constitute a single offense).[4] Since this is largely a question of Massachusetts law, we too will assume arguendo that a defendant cannot lawfully be convicted of both crimes. Thus, our inquiry focuses on the second element of the petitioner's hypothesis.

Central to our analysis is a recognition that the petitioner and the SJC have configured the double jeopardy issue differently. The petitioner does not look beyond the fact of the original conviction for receiving stolen property, treating the vacation of that conviction as irrelevant to the double jeopardy analysis. In his view, the Commonwealth was constitutionally barred from soliciting the armed robbery indictment after it obtained the original conviction for receiving stolen property; it secured the armed robbery indictment while that conviction was still on the books; and so, because the indictment was

_____

[4]Other courts have divided on whether a person may be convicted of both robbery of certain property and receiving that property. Compare, e.g., Heflin v. United States, 358 U.S. 415, 419-20 (1959) (holding, under federal criminal statutes, that a defendant may not be punished for both armed bank robbery and receiving stolen bank property), and Dove v. Peyton, 343 F.2d 210, 213-14 (4th Cir. 1965) (similar; applying Virginia law), with, e.g., Ex parte Howard, 710 So. 2d 460, 463 (Ala. 1997) (holding that Alabama law permits a prosecution for robbery following a conviction for receiving stolen property), and State v. Sardeson, 437 N.W.2d 473, 480-81 (Neb. 1989) (similar; applying Nebraska law).

unconstitutional when contrived, the Commonwealth should not have been permitted to pursue it.

The SJC used a wider-angled lens. It examined the constitutionality of the second indictment in light of both the prior conviction and the subsequent vacation of that conviction. Gauging the constitutionality of the armed robbery indictment from that perspective, "there [wa]s no longer a final adjudication of guilt or innocence" on the receiving stolen property charge. Jackson, 717 N.E.2d at 1003. Far from deeming the petitioner's voluntary withdrawal of his guilty plea as irrelevant, the SJC thought it was "[c]ritical to the disposition" of his double jeopardy argument. Id. In short, the petitioner and the SJC were arguing past each other, advocating parallel but materially different analyses.

Given the unique facts of this case, that discrepancy is problematic for the petitioner. On habeas review, the AEDPA requires us to focus our attention on the state court's analysis. The petitioner's obligation is not simply to offer a plausible argument for the unconstitutionality of his conviction, but, rather, to identify how the state court's analytical path strayed beyond permissible bounds. See 28 U.S.C. § 2254(d)(1).

In this instance, the SJC relied primarily on the decision in United States v. Scott, 437 U.S. 82 (1978). There, the defendant sought and won dismissal of criminal charges. Id. at 84.

-18-

After the government had appealed, he attempted to invoke double jeopardy protections to forestall a subsequent trial. Id. The Supreme Court rejected this tactic, holding that the government could appeal the dismissal without triggering double jeopardy concerns. Id. at 86-87. The court pointed out that the defendant had opted to move for dismissal in the first place and stated that "the Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." Id. at 99.

The petitioner insists that Scott is inapposite. He posits that its holding would apply only if he had moved to withdraw his guilty plea for receiving stolen property and then relied upon the Double Jeopardy Clause in an effort to preclude the Commonwealth from retrying him on that same charge. The petitioner sees this case as falling instead within a different precedential orbit.

One of the cases comprising that orbit is Blackledge v. Perry, 417 U.S. 21 (1974). There, while a convicted defendant's appeal was pending, the government indicted him for a more serious (yet mutually exclusive) crime. Id. at 22-23. Even though the defendant pleaded guilty to this second charge, the Supreme Court later approved habeas relief because it found the second prosecution to be a vindictive response to the defendant's exercise of his right to appeal, so that "[t]he very initiation of the proceedings . . . operated to deny [the petitioner] due process of

-19-

law." Id. at 30-31. The petitioner's second supporting authority is Menna. As noted above, Menna prohibits a state from "haling a defendant into court on a charge" when double jeopardy applies. Menna, 423 U.S. at 62. The petitioner likens the armed robbery indictment to a constructive "haling" that the Constitution prohibited the Commonwealth from pursuing.

To be sure, all three of these cases offer plausible analogies to the case that confronts us. The fact remains, however, that none of them is sufficiently on point to dictate the result. Scott differs materially from the instant case because there, unlike here, the defendant's motion to vacate the original conviction was granted before the state sought a second (allegedly incompatible) indictment.[5] See Scott, 437 U.S. at 84. Blackledge is distinguishable because there, unlike here, the state's decision to pursue a second indictment had the effect of punishing the defendant for exercising his right to appeal. See Blackledge, 417 U.S. at 28. Menna is distinguishable because there, unlike here, the second conviction occurred at a time when the first conviction remained intact. See Menna, 423 U.S. at 61. Since there is no clearly established Supreme Court precedent directly on point, the SJC's rejection of the petitioner's double jeopardy claim does not transgress the "contrary to" prong of 28 U.S.C. § 2254(d)(1). See

---

[5]This sequencing also serves to distinguish other cases on which the Commonwealth relies. See, e.g., Pearce, 395 U.S. at 719-20; United States v. Ball, 163 U.S. 662, 671-72 (1896).

-20-

Williams, 529 U.S. at 405-06; see also Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002) ("Where a relevant but not factually congruent precedent exists, the state court need only apply a test consistent with the one announced by the Supreme Court in order to avoid the toils of section 2254(d)(1)'s 'contrary to' clause.").

Given the idiosyncratic nature of this case and the dearth of pertinent authority, we likewise conclude that the SJC's reliance on Scott, rather than Blackledge or Menna, is not an unreasonable application of Supreme Court case law. Reasonableness depends on context. For the purposes of determining the reasonableness of a state court's decision under section 2254(d)(1), we have declared that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36. This principle carries the day here. There is support in the Supreme Court's case law for the competing positions of the petitioner and the SJC, and nothing in Blackledge, Menna, or their progeny is so compelling as to render the SJC's reliance on Scott unreasonable.

The petitioner's fallback position bears a close relationship to his main argument. He asserts that since the Commonwealth was constitutionally barred from indicting him for armed robbery when the grand jury acted, it could cure the constitutional violation only by restoring the status quo ante

-21-

(that is, by withdrawing the offending indictment). To support this claim, the petitioner leans heavily upon a concurring opinion authored by Justice Blackmun and a smattering of decisions from federal courts of appeals. See, e.g., Morris v. Mathews, 475 U.S. 237, 255 (1986) (Blackmun, J., concurring); Murphy v. Puckett, 893 F.2d 94, 97 (5th Cir. 1990).

We need not dwell on these authorities because none of them suffices to overcome the obstacle created by the AEDPA. The reference in 28 U.S.C. § 2254(d)(1) to "clearly established Federal law" encompasses only the holdings of the Supreme Court. See Williams, 529 U.S. at 412 ("That statutory phrase refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision."); Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (noting that "factually similar cases from the lower federal courts may inform" determinations under section 2254(d)(1), but only Supreme Court holdings can provide the "seal of approval"). Generally speaking, this formulation excludes concurring and dissenting opinions of individual Justices as well as decisions of the courts of appeals.[6]

_____

[6]We hasten to add that authorities of this kind occasionally may offer insight into a section 2254(d)(1) determination. We have acknowledged, for example, that "[r]eference to such cases may be especially helpful when the governing Supreme Court precedent articulates a broad principle that applies to a wide variety of factual patterns." Ouber, 293 F.3d at 26. That principle is inapposite here inasmuch as the petitioner advances a proposition that simply has not been embraced by the Supreme Court. The petitioner's authorities are the proposition's originating sources,

-22-

On a more fundamental level, the petitioner's argument again fails to address the bona fides of the SJC's approach. Even if the Commonwealth were barred from indicting the petitioner for armed robbery before the conviction for receiving stolen property was vacated, our decision must account for the petitioner's voluntary motion to vacate that conviction — a step that opened the door for the successful prosecution of the armed robbery charge. The SJC ruled that the Commonwealth was not constitutionally barred from pursuing the second indictment after the vacation of the first conviction at the petitioner's behest. Jackson, 717 N.E.2d at 1003. For the reasons discussed above, that ruling — whether or not precisely correct as a matter of constitutional law — neither contravenes nor unreasonably applies Supreme Court precedent. On this record, then, the Double Jeopardy Clause does not open an avenue leading to habeas relief.

2. **The Collateral Estoppel Claim**. We turn next to the petitioner's asseveration that principles of collateral estoppel precluded a finding that he committed the armed robbery. Section 2254(d)(1) governs this asseveration as well, so our analysis of it assumes the same contours as our discussion of the petitioner's double jeopardy claim.

_____

not clarifying or explanatory sources; as such they do not meet the demands of section 2254(d)(1).

Collateral estoppel "means simply that when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). The petitioner seeks to apply this tenet in support of the claim that the conviction for receiving stolen property remained a valid and final judgment notwithstanding its vacation (and, thus, precluded the Commonwealth from proceeding on the armed robbery charge). To this end, he insists that the conviction rested on the factual predicate that he received stolen property; that its vacation had no corrosive effect on these (previously established) ultimate facts; and that, therefore, the indictment accusing him of stealing that very property was founded on a legal impossibility. The SJC rejected this theory, concluding that vacatur of the conviction meant that "there now is no final determination of the facts," so that "[c]ollateral estoppel does not apply." Jackson, 717 N.E.2d at 1004.

This conclusion is neither contrary to, nor an unreasonable application of, Supreme Court precedent. After all, it is hornbook law that "[a] vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." No East-West Highway Comm. v. Chandler, 767 F.2d 21, 24 (1st Cir. 1985); accord U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 598 (Fed. Cir. 1995);

-24-

Franklin Sav. Ass'n v. Office of Thrift Superv., 35 F.3d 1466, 1469 (10th Cir. 1994); 18A Charles Alan Wright et al., Federal Practice and Procedure § 4432 (2002). The petitioner points to no decision of the Supreme Court that casts doubt upon this hoary principle. Thus, the AEDPA forbids us from disturbing the SJC's resolution of the collateral estoppel claim.

**3. The Due Process Claim.** The petitioner also contends that the vacation of his conviction for receiving stolen property occurred at the expense of his right to procedural due process. This abridgement occurred, the petitioner says, when the Cambridge District Court "denied [him] a meaningful opportunity to be heard on his motion [to vacate his conviction]." Appellant's Br. at 37. The federal district court determined that this claim was not ripe for habeas review since its merits had never been fully adjudicated by the state courts. Jackson v. Coalter, 2002 WL 1760879, at *3. We uphold this determination.

The AEDPA directs that habeas relief "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement codified preexisting law. The Supreme Court has long maintained "that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Rose v. Lundy, 455 U.S. 509, 515 (1982)

-25-

(discussing Ex parte Royall, 117 U.S. 241, 251 (1886)). We have interpreted this imperative as requiring a habeas petitioner to "have presented both the factual and legal underpinnings of his claim to the state courts in order for us to find it exhausted." Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989). Moreover, we have made no bones about the fact that a failure to exhaust ordinarily is "fatal" to the prosecution of a habeas petition. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988).

The petitioner concedes that, as a general rule, exhaustion is required. He maintains, however, that he exhausted this claim by invoking due process protections in the state courts. This is partially true, but misleading. The issue that he now seeks to advance was never properly exhausted. We explain briefly.

The petitioner mounted two legal campaigns that led him to the SJC. The first foray culminated in the SJC's opinion rejecting his double jeopardy and collateral estoppel claims. See Jackson, 717 N.E.2d at 1003-04. Careful perscrutation of the record indicates that the petitioner never adequately articulated a due process claim at or before that stage of the proceedings. The closest that he came was his plaint that the Cambridge District Court allowed his "uncounseled" motion to vacate the original conviction despite the fact that he "needed counsel to determine whether to proceed with the motion at all."

The SJC treated this plaint as a claim rooted in the petitioner's Sixth Amendment right to counsel and concluded that no violation of that right had occurred. Id. at 1005. This was a reasonable reading of the petitioner's claim as then presented.[7] More importantly, it did not suffice to exhaust the differently grounded Fifth Amendment claim that the petitioner now seeks to pursue. See Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (holding that to satisfy the exhaustion requirement "a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of this federal claim"); Martens, 836 F.2d at 717 ("[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.").

Following the SJC's rejection of his initial appeal, the petitioner persevered in the state courts. During his second campaign, he filed a motion to dismiss the armed robbery charge — a motion that included a better-articulated due process claim. The Suffolk Superior Court rejected that claim, but the SJC refused to entertain an immediate appeal, holding that interlocutory review was not available. Jackson v. Commonwealth, 770 N.E.2d 469, 471

---

[7]Before us, the petitioner does not challenge the SJC's resolution of his Sixth Amendment claim. Accordingly, we take no view of that ruling.

(Mass. 2002) (noting that the petitioner had "failed to demonstrate that an appeal following conviction on the armed robbery charges would not be adequate").[8] Since the date of that ruling, the petitioner has done nothing further to exhaust this due process claim in the state courts. The state courts, therefore, have not had an appropriate opportunity to adjudicate the claim. Accordingly, we affirm the district court's determination that the petitioner's procedural due process claim is unexhausted. See 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); cf. Mele v. Fitchburg Dist. Court, 850 F.2d 817, 820 (1st Cir. 1988) (requiring that "one who seeks to invoke the federal habeas power must fairly present — or do his best to present — the issue to the state's highest tribunal").

## III. CONCLUSION

We need go no further. The petitioner, ably represented before us by appointed counsel, has raised difficult issues. In

---

[8]Adopting the rule in Abney v. United States, 431 U.S. 651, 660-62 (1977), Massachusetts affords interlocutory review of double jeopardy claims. See Neverson v. Commonwealth, 546 N.E.2d 876, 877 (Mass. 1989) ("A criminal defendant who raises a double jeopardy claim of substantial merit is entitled to review of the claim before he is retried."). Most other issues must await the entry of final judgment before a right of appellate review attaches. See S.J.C. Rule 2:21(2); see also Glawson v. Commonwealth, 764 N.E.2d 869, 869-70 (Mass. 2002).

the end, however, he cannot prevail.  Although we agree that his guilty plea to the armed robbery charge did not render his application for habeas relief moot, we nonetheless conclude that the application fails on the merits.

**The district court's order of September 12, 2002 is vacated.  The district court's order of July 30, 2002  is reinstated.  The judgment in favor of the respondent is affirmed**.