**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

Nos. 02-2398
      02-2560

LANCE 3X HULLUM,

Petitioner, Appellant,

v.

MICHAEL MALONEY, COMMISSIONER OF THE
DEPARTMENT OF CORRECTIONS,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Lance 3X Hullum on brief pro se.
Thomas F. Reilly, Attorney General, and Annette C. Benedetto,
Assistant Attorney General, on brief for appellee.

June 30, 2004

**PER CURIAM**.  This habeas appeal presents a single issue involving the Double Jeopardy Clause.  To prevail on this claim, petitioner must establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As petitioner has not come close to making such a showing, we affirm the denial of habeas relief.

Following his brutal assault on a fellow Massachusetts inmate, petitioner Lance Hullum was subjected to prison disciplinary proceedings and sanctioned with a 66-month sentence to the Departmental Disciplinary Unit (DDU) at MCI Cedar Junction. For that same conduct, he was also indicted in state court for assault and battery with a dangerous weapon (along with another charge that was later dropped).  Claiming that the administrative sanction constituted punishment for double jeopardy purposes, petitioner moved for dismissal of the indictment.  He prevailed on this argument at the trial court level, but the Supreme Judicial Court (SJC), in a pair of opinions addressing successive appeals brought by petitioner and other inmates, found no double jeopardy violation.  See Commonwealth v. Forte, 423 Mass. 672 (1996); Clark v. Commonwealth, 428 Mass. 1011 (1998) (rescript).  Petitioner thereafter pled guilty to the criminal charge.

-2-

After another round of state court challenges, petitioner sought habeas relief in federal court, advancing four separate claims. The district court ended up denying relief under United States v. Broce, 488 U.S. 563 (1989), concluding that petitioner's voluntary and counseled guilty plea effected a waiver of any ensuing attempt to collaterally attack his conviction. The court did, however, certify the double jeopardy issue for appeal.

At the outset, petitioner disputes the finding of waiver. He claims to fall within an exception to the Broce rule announced in Menna v. New York, 423 U.S. 61 (1975) (per curiam). Addressing an analogous double jeopardy claim, the Court there held that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." Id. at 62 (citing Blackledge v. Perry, 417 U.S. 21, 30 (1974)). Petitioner's reliance on Menna is arguably justified. See, e.g., Jackson v. Coalter, 337 F.3d 74, 78-81 (1st Cir. 2003) (applying Menna exception under somewhat comparable circumstances). For this reason, and because petitioner's claim so plainly fails to meet the rigorous § 2254(d)(1) standards, we sidestep the waiver issue and turn to the merits.

As mentioned, our task is not to decide whether the SJC's double jeopardy ruling was correct, but only whether it contravened

or unreasonably applied Supreme Court precedent. It clearly did neither of those things. At the time petitioner first raised his double jeopardy claim, the view was widely accepted that "prison discipline does not preclude a subsequent criminal prosecution or punishment for the same acts." Garrity v. Fiedler, 41 F.3d 1150, 1152 (7th Cir. 1994) (listing cases from eight other circuit courts). In concluding that a different result was nonetheless warranted, the first superior court judge in petitioner's case relied on United States v. Halper, 490 U.S. 435 (1989)--and in particular its comment that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment," id. at 448.

Yet Halper does not assist petitioner. For one thing, those federal courts that reconsidered the issue in the wake of Halper uniformly deemed that decision inapplicable in the prison-discipline context. See, e.g., United States v. Mayes, 158 F.3d 1215, 1220 n.9 (11th Cir. 1998) (collecting cases); cf. United States v. Stoller, 78 F.3d 710, 717-18 (1st Cir. 1996) (limiting Halper to compensatory, monetary penalties). More important, the Supreme Court narrowed the Halper decision in United States v. Ursery, 518 U.S. 267, 284 n.2, 286 (1996), and then "in large part disavow[ed]" the entire Halper analysis in Hudson v. United States, 522 U.S. 93, 96, 100-02 (1997).

-4-

The Hudson Court noted that "[i]f a sanction must be 'solely' remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." Id. at 102. Instead, reverting to "traditional double jeopardy doctrine," id. at 101, it declared that double jeopardy "protects only against the imposition of multiple criminal punishments for the same offense," id. at 99. As it did in Ursery, see 518 U.S. at 288, the Hudson Court applied a two-part test to determine "[w]hether a particular punishment is criminal or civil," 522 U.S. at 99. The first step is to ascertain what the government intended in this regard. See id. The second is to ask "whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." Id. (internal quotation marks and citations omitted). The Court listed seven "guideposts" to facilitate the latter inquiry, see id. at 99-100, and added that "only the clearest proof will suffice to override legislative intent" in that respect, id. at 100 (internal quotation marks omitted).

Far from deviating from these principles, the SJC's disposition of the double jeopardy issue was consistent therewith. It determined that "imposition of prison discipline is a civil proceeding," Forte, 423 Mass. at 676, and that DDU confinement had a "remedial purpose" as well as a punitive one,

-5-

id. at 677.  On the sparse record in <u>Forte</u>, it also found no showing "that DDU confinement is so extreme as to any defendant in relation to his wrongdoing that the double jeopardy clause is implicated."  <u>Id</u> at 678.  The superior court on remand reached the same conclusion after making detailed findings of fact, and the SJC justifiably endorsed that determination in <u>Clark</u>.  <u>See</u> 428 Mass. at 997.  Nothing in the SJC's analysis contravened or unreasonably applied Supreme Court precedent.  <u>Cf.</u> <u>Jackson</u>, 337 F.3d at 81-85 (holding that double jeopardy claim failed to satisfy § 2254(d)(1) standards).

<u>Affirmed.</u>